**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MARUYAMA U.S., INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:15-CV-00962-L** |
| | § | |
| **FRAZIER CORPORATION, d/b/a SOUTH** | § | |
| **SHORE EQUIPMENT,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated June 24, 2015, this case was referred for pretrial management. Before the Court for recommendation is *Defendant Frazier Corporation D/B/A South Shore Equipment's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and 12(b)(3) Motion to Dismiss for Improper Venue*, filed May 26, 2015 (doc. 8). Based on the relevant filings and applicable law, the motion to dismiss for lack of personal jurisdiction should be **GRANTED,** and the motion to dismiss for lack of venue should be **DENIED as moot**.

## I.  BACKGROUND

On March 27, 2015, Maruyama U.S., Inc. (Plaintiff) filed this action against Frazier Corporation, d/b/a South Shore Equipment (Defendant) asserting claims in connection with the performance and termination of a distributor agreement. (*See* doc. 1.) Plaintiff is a United States subsidiary of a multinational lawn and gardening equipment manufacturer based in Japan that owns several licensed and unlicensed trademarks. (doc. 1 at 2.) It generally sells its products through distributors who are responsible for "locating and signing dealers, maintaining a dealer network, warranty support and some marketing." (*Id.*)

A.      <u>**The Agreement**</u>

Plaintiff entered into a Distributor Agreement (the Agreement) with Defendant that became effective on or about January 1, 2010.  (doc. 8-1 at 8.)  It.  (doc. 1 at 2.)  Defendant's President at that time, Thomas Frazier, signed the Agreement on its behalf.  (*See* doc. 8-1 at 23; doc. 11 at 1.)

Pursuant to the Agreement, Plaintiff sold products to Defendant for distribution to retail dealers exclusively in Hawaii and various other islands (Guam, Micronesian Islands, Palau, Jaipur, Rhoda, and Tinian) (the Territory).  (*Id*. at 8, 24.)  Plaintiff also granted Defendant a limited, non-exclusive license to use its name, trademarks, trade names, and logos in connection with the distribution and sale of Plaintiff's products.  (*Id*. at 14.)  The Agreement provided that it was to be governed by, interpreted, and construed in accordance with the laws of the State of Washington, and the parties consented to the jurisdiction of any federal or state court in King County, Washington for any lawsuit brought to enforce any right or obligation under the Agreement.  (*Id*. at 19.)

In November 2011, Defendant terminated the Agreement as to the Guam territory.  (doc. 1 at 3.)  Plaintiff found a dealer who was willing to take the Guam inventory, so Plaintiff charged the dealer for the goods and credited Defendant for payments not yet made.  (*Id*.)

In 2011 and early 2012, Plaintiff alleges that Defendant was advertising its products on television and in other media pursuant to its limited license to advertise and sell Plaintiff's products.  (*Id*. at 4.)  It contends that Defendant applied for payment of "co-op" credits permitted by the terms of the Agreement.  (*Id*. at 5.)  In March 2012, Defendant terminated the Agreement as to the remaining Territories.  (*Id*. at 4.)  A joint inventory was taken at Defendant's warehouse in order to determine which products were suitable for return under the Agreement.  (*Id*. at 4.)  In lieu of having Defendant return the goods directly to Plaintiff, it requested that Defendant ship some of the

2

goods to the Kawumara Expo, a yearly event in Hawaii, at Plaintiff's expense.  (*Id.*)  Plaintiff

calculated the amount due to Defendant based on the items it returned, "subject to the restocking fee

and other expenses outlined in the Agreement."  (*Id.*)

**B.    The Dispute**

In June 2012, Defendant sent Plaintiff a demand for payment in the amount of $134,749.07,

which included a partial accounting that Plaintiff had previously provided to Defendant.  (*Id.* at 5.)

Plaintiff disagreed with Defendant's accounting, and the parties have been unable to resolve the

dispute regarding the amount of money, if any, that is owed to Defendant.  (*Id.*)

Plaintiff contends that the dispute "centers around the contractual restocking fee, inventory,

legal fees, and related matters for the winding up of the contract."  (*Id.*)  The parties have been

unable to agree as to the timing of the Agreement, its terms, amounts due to each other, and "related

continuing disputes."  (*Id.*)  Additionally, Plaintiff alleges that Defendant has made sales of products

directly to retail customers in violation of the Agreement, and that it has marketed and sold

Plaintiff's products without a license to use Plaintiff's trademarks.  (*Id.*)

Plaintiff seeks a declaration as to the parties' rights, status, and legal relations as it relates

to the Agreement, including: (i) the time of termination of the Agreement; (ii) what amounts are due

between the parties; (iii) the rights of the parties as to any "co-op" advertising credits requested by

Defendant; (iv) whether finance or interest charges are due between the parties; (v) whether Plaintiff

has paid for all inventory for which Defendant may be entitled; (vi) that Plaintiff is entitled to deduct

15% from all credits as a restocking fee for all products returned by Defendant; (vii) that Plaintiff

is entitled to deduct its legal fees from all negotiations and from this suit as a credit against all

amounts it may owe to Defendant; and (viii) all legal rights between the parties as it relates to the

Agreement and its termination.  (*Id*. at 7-8.)  It also brings alternative claims for breach of contract, trademark infringement under Lanham Act § 32, and trademark infringement under Lanham Act § 45.  (*Id*. at 8-10.)  It seeks attorneys' fees and costs.  (*Id*. at 10.)

## C.   <u>Motion to Dismiss</u>

On May 26, 2015, Defendant moved to dismiss Plaintiff's claims for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3). (doc. 8.)

Plaintiff is a Washington corporation with its principal place of business in Fort Worth, Texas.  (doc. 1 at 1.)  Defendant is a Hawaiian corporation with its principal place of business in Hawaii.  (*Id*.; doc. 9 at 1.)  According to the uncontroverted affidavit  of its President, Lynette Frazier[1] (the Frazier Affidavit), Defendant operates in Hawaii and other islands, but it does not operate in Texas.  (doc. 9 at 2.)  It does not have any subsidiaries operating or doing business in Texas.  (*Id*. at 2.)  It owns no real property, has no bank accounts, and has no office in Texas.  (*Id*.) Defendant has no other business relationships in Texas, and it has not held business meetings in Texas.  (*Id*.)  None of its employees reside in or are domiciled in Texas, and it has not sold any goods, done any marketing, or used any of Plaintiff's trademarks in Texas.  (*Id*.)  All witnesses affiliated with Defendant who have knowledge of relevant facts reside in Hawaii, except for one who resides in California.  (*Id*.)

According to the affidavit of Mark Dyos, Plaintiff's Vice President (the Dyos Affidavit), then President Thomas Frazier attended a week-long training in Texas in 2009 on behalf of Defendant before it became a distributor for Plaintiff.  (doc. 11 at 2.)  Defendant also sent its Parts

---

[1]Mr. Frazier died in 2011, and his wife, Lynette Frazier, took over his duties.  (doc. 1 at 3; doc. 11 at 2.)

Manager and Warehouse Manager (Gene Suzuki) to a training seminar in Texas in 2010.  (*Id.*)

Additionally, Defendant contacted Plaintiff in Texas about warranty matters under the Agreement.

(*Id.*)  If there were any concerns about whether the warranty work should be accepted or denied,

Defendant shipped the product to Plaintiff in Texas for inspection and a determination on whether

the warranty was applicable.  (*Id.*)   Defendant shipped product at least ten times to Texas for

Plaintiff's inspection.   (*Id.*)   Defendant made payments to Texas under the Agreement, and it

initiated communications with Plaintiff's employees in Texas regularly during the course of

performance of the Agreement.  (*Id.*)

With a timely-filed response (doc. 10) and a timely-filed reply (doc. 14 ), the motions are

now ripe for recommendation.

## II.   RULE 12(b)(2)

Defendant moves to dismiss this action under Rule 12(b)(2) for lack of personal jurisdiction.

(*See* doc. 10 at 2.)

### A.   <u>Legal Standard</u>

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the

non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the

exercise of jurisdiction over the defendant comports with the due process requirements of the United

States Constitution.   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda*

*Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam).

A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same

extent as a state court in the same forum.  *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir.

1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1).  Because the Texas long-arm statute authorizes the

exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (West 2012). "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011). General jurisdiction exists where the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (internal quotation marks

omitted). It is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

Where, as here, no evidentiary hearing is conducted, the plaintiff need only make a *prima facie* showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The plaintiff's uncontroverted factual allegations in the complaint must be accepted as true, and all factual disputes contained in the parties' affidavits must be resolved in its favor. *Alpine View Co., Ltd.*, 205 F.3d at 215; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Courts are not required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine Corp.*, 253 F.3d at 869.

B.    **Specific Jurisdiction**[2]

Defendant argues that it does not have minimum contacts with the State of Texas sufficient to invoke personal jurisdiction over it because it has not purposefully availed itself of the privilege of conducting activities within Texas. (doc. 8 at 4.) It argues that exercising jurisdiction over it would offend fair play and due process considerations. (*Id*. at 9.)

Plaintiff's declaratory judgment claim arises out of Defendant's termination of the Agreement and relates to their disagreement as to the time of termination of the Agreement; the amounts owed to each party under the Agreement, including finance and interest charges; and allowable deductions for amounts owed under the Agreement. (doc. 8 at 5, 7-8.) Its alternative claims arise out of Defendant's alleged marketing, advertisement, and sale of Plaintiff's products

---

[2]Plaintiff states that it is not asserting that the Court has general jurisdiction over Defendant. (doc. 10 at 3.)

without a license.  (*Id*. at 8-10.)   Plaintiff provides evidence that (i) Mr. Frazier signed the Agreement on behalf of Defendant; (ii) Mr. Frazier attended training for Defendant in Texas in 2009; (iii) Ms. Suzuki attended training for Defendant in Texas in 2010; (iv) Defendant contacted Plaintiff in Texas about warranty matters, and it shipped products to Plaintiff in Texas for inspection and resolution of warranty issues; (v) Defendant made all payments under the Agreement to Plaintiff in Texas; and (vi) Defendant communicated with Plaintiff by contacting it in Texas.  (*Id*. at 4.)

It is well-established that merely entering in a contract with a resident of the forum state is not sufficient to support personal jurisdiction. *Freudensprung v. Offshore Technical Services, Inc.*, 373 F.3d 327, 344 (5th Cir. 2004).  Nor is the combination of entering into a contract with a resident defendant and engaging in activities incidental to the performance of a contract, such as mailing payments to a resident defendant and corresponding extensively with a resident defendant sufficient to establish specific jurisdiction.  *See Brammer v. Eng'g, Inc. v. E. Wright Mountain L.P.*, 307 Fed. App'x 845, 847-848 (5th Cir. 2009)(per curiam)(finding that activities incidental to the performance of a contract are insufficient to constitute purposeful availment or establish minimum contacts necessary to support personal jurisdiction); *Freudensprung*, 373 F.3d at 345 (finding that purchasing the services of a resident via a contract, initiating a long-term business relationship with that resident, communicating with that resident regarding the development and execution of the contract, and wiring money to that resident in Texas did not indicate that the defendant intended to avail itself of the privilege of doing business in Texas).  In *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), the defendant's contacts with Texas relating to the claims alleged in the lawsuit were that (i) it entered into a contract with plaintiff, a Texas corporation, (ii) it sent a final agreement from Oklahoma to Texas, (iii) it sent three payments to Texas, and (iv) it engaged in extensive telephonic

8

and written communications with plaintiff.  801 F.2d at 778.  The court found that these contacts were "limited" and did not support the exercise of specific jurisdiction.  *Id*.  Given that the material performance of the contract was centered outside of the forum state, the fact that defendant mailed payments to the forum state did not weigh heavily in its determination.  *Id*. at 778.  It noted that "merely contracting" with a resident of Texas and communicating with Texas "in the course of developing and carrying out the contract was in itself" insufficient to "constitute purposeful availment of the benefits and protections of Texas law." *Id*.

Similarly, in *Stuart v. Spademan*, 772 F.2d 1185, 1192-93 (5th Cir. 1985), the court looked to "factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing" in order to determine whether the defendant had sufficient contacts.  772 F.2d at 1193.  In that case,  (i) the defendant entered into a contract with Texas residents; (ii) the defendant shipped ski bindings to plaintiffs in Texas; (iii) the defendant or his attorneys and the plaintiffs exchanged letters and telephone calls regarding the assignment and reissuance of the subject patent; (iv) the contract included a choice-of-law provision that anticipated application of Texas law; (v) the defendant's corporation advertised and shipped its products to Texas; and (vi) defendant's corporation marketed the modified bindings in Texas.  *Id*. at 1192.  The court found that the defendant's shipments of two bindings to the plaintiffs in Texas was of little weight, and the communications between the defendant and plaintiffs leading up to the contract, whether originating in Texas or California, were insufficient to confer jurisdiction.  *Id*. at 1193-94.  It noted that the quality of contacts is the issue when determining purposeful availment, not the number of contacts.  *Id*. at 1194.  Finally, the court found that the defendant's mailing of payments to the plaintiffs in Texas was insignificant to its determination.  *Id*.  Considering the totality of

circumstances, it concluded that the defendant did not have the minimum contacts necessary to establish jurisdiction over defendants.  *Id.*

As in *Holt* and *Stuart*, Defendant contracted with a Texas resident, engaged in communications with Plaintiff relating to the execution and performance of the Agreement, and sent payments to Texas, none of which indicate that Defendant intended to avail itself of doing business in Texas.  Additionally, any significance attributed to those contacts is diminished by the fact that the performance of the Agreement was in Hawaii and other islands and not Texas, and the Agreement included a choice-of-law provision for Washington, not Texas. *See Freudensprung*, 379 F.3d at 345 (noting that the significance of the alleged minimum contacts was severely diminished by the fact that the contract at issue specified that it was governed by English, not Texas law, and the material portions of the contract were to be performed in West Africa, not in Texas); *Holt*, 801 F.2d at 778 (finding that although the contract between the parties was cemented in Texas, the significance of that fact was diminished by the contract provision specifying Oklahoma law would govern the agreement, and given the fact that material performance of the contract occurred in Oklahoma, the fact that the defendant mailed payments to Texas did not weigh heavily in the Court's determination); *Brammer*, 307 Fed App'x at 848 (noting, in addition to the fact that the defendants' alleged contacts were incidental to performance of the contract, that the performance of the contract was centered in Texas and not the forum state, and that the contract included a Texas choice-of-law provision).[3]

---

[3]Plaintiff cites *WNS, Inc. v. Farrow*, 884 F.2d 200 (5th Cir. 1989) as support for the exercise of specific jurisdiction.  (doc. 10 at 5.)  It argues that the defendants' Texas contacts in that case - coming to Texas to negotiate a franchise agreement, attending a week-long training in Texas, and sending payments to the plaintiff in Texas - were sufficient to support specific jurisdiction.  (*Id.*)  *WNS, Inc.* is distinguishable because the court specifically noted, "without addressing whether the alleged contractual connections by the [defendants] with [the plaintiff] in Texas satisfied the due process requirement of 'minimum contacts,'" that the plaintiff had established a prima facie

The remaining alleged contacts are not related to any of the claims asserted in the complaint, even assuming they were sufficient to confer specific jurisdiction.[4] Plaintiff's claims have nothing to do with the training in Texas attended by two of Defendant's corporate representatives, and it does not allege that any of its claims arise out of the trips to Texas for the training or the content of the training. It does not allege that training was contemplated by the Agreement or was in furtherance of the Agreement. In fact, the 2009 training occurred before the parties entered into the Agreement. Additionally, the shipment of products to Plaintiff for inspection and resolution of warranty issues is not the basis of any of Plaintiff's claims and is are not referenced anywhere in the complaint. The training in Texas attended by Mr. Frazier and Ms. Suzuki and the shipment of products to Texas for inspection and resolution of warranty issues are insufficient to confer specific jurisdiction. *See ITL Int'l, Inc. v. Café Soluble, S.A.*, 464 F. App'x 241, 243 (5th Cir. 2012)(finding the seller's claims against distributer did not arise out of or relate to the distributor's contacts with the forum state for purposes of specific jurisdiction, and therefore the forum state lacked specific jurisdiction over distributor). Plaintiff has not made a prima facie showing of specific jurisdiction as to Defendant.[5]

---

case of personal jurisdiction over the defendants in Texas by alleging that defendants committed the intentional tort of fraud, at least in part, through their activities in Texas. 884 F.2d at 203. Here, Plaintiff has made no allegations that Defendant committed a tort through its activities in Texas.

[4]Plaintiff argues in its response that Defendant shipped product to Texas in order to obtain a refund, and that the dispute originally arose because of Defendant's claim that it was not paid for the entire product that it sent to Texas. (doc. 10 at 6.) Nowhere in the complaint or in its evidence did Plaintiff allege or contend that Defendant shipped product to Texas in order to obtain a refund. The only contentions regarding Defendant's shipment of product to Texas were in regards to warranty claims under the Agreement. (*See* doc. 11 at 2.)

[5]Since Defendant does not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996). Since Defendant's motion to dismiss for lack of personal jurisdiction should be granted, it is also unnecessary to reach its 12(b)(3) motion to dismiss for improper venue.

## III.  RECOMMENDATION

Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction should be

**GRANTED**, and Defendant's 12(b)(3) motion to dismiss for improper venue should be **DENIED**

**as moot**.  All of Plaintiff's claims against Defendant should be dismissed without prejudice.

**SIGNED on this 12th day of February, 2016.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE